UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BHANU VIKRAM,<br><br>   Plaintiff,<br><br> v.<br><br>FIRST STUDENT MANAGEMENT, LLC,<br><br>   Defendant. | Case No. 17-cv-04656-KAW<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 9 |

Plaintiff Bhanu Vikram filed the instant putative class action against Defendant First Student Management, LLC in the San Francisco County Superior Court. (Dkt. No. 1, Exh. A ("Complaint").) On August 11, 2017, Defendant removed the case, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). (Not. of Removal, Dkt. No. 1.) Plaintiff now moves to remand the case to state court. (Plf.'s Mot., Dkt. No. 9.)

Upon consideration of the parties' filings, as well as the arguments presented at the October 5, 2017 hearing, and for the reasons set forth below, the Court DENIES Plaintiff's motion.

## I. BACKGROUND

Defendant "is a school bus operator that provides student transportation services for schools and districts in the United States and Canada." (Compl. ¶ 2.) From January 2016 to December 2016, Plaintiff worked for Defendant in California as a bus driver, and was classified as a non-exempt employee. (Compl. ¶ 3.)

On July 6, 2017, Plaintiff filed the instant case on behalf of himself and a California class, defined as all individuals who are or were employed by Defendant in California as bus drivers, and classified as non-exempt employees. (Compl. ¶ 4.) Plaintiff asserts that during the class period, Defendant failed to accurately calculate and pay Plaintiff and the California class for time

worked. (Compl. ¶ 8.) Specifically, Plaintiff alleges that he and the California class members "were instructed to appear at Defendant's bus yard at a pre-designated time, typically 6:00 a.m. for morning runs and 12:30 for afternoon runs." (Compl. ¶ 9 (all caps omitted).) When they arrived, workers would stand in line to receive their route assignment for the day. After receiving their assignments and retrieving their keys, workers would walk to their assigned bus. Once they got on the bus, the workers would be able to log into Defendant's time-keeping system with their employee badge, and it was only then that they were considered to be "on the clock." (*Id.*) Plaintiff asserts that it was mandatory that workers arrive at the pre-designated times to obtain their work assignments, conduct pre-trip inspections, and retrieve their bus keys, and that on average, this period would take five to ten minutes. (*Id.*) Thus, workers "forfeited time worked by regularly working without their time being accurately recorded and without minimum wage compensation at the applicable rate." (*Id.*) Based on this practice requiring off the clock work, Plaintiff also asserts that workers were not provided with complete and accurate wage statements. (Compl. ¶ 14.)

Plaintiff also asserts that Defendant failed to properly compensate workers due to Defendant's non-discretionary incentive program. (Compl. ¶ 11.) This program "provided all employees paid on an hourly basis with incentive compensation when the employees met the various performance goals set by" Defendant. (*Id.*) Plaintiff alleges, however, that Defendant "failed to include the incentive compensation as part of the employees' 'regular rate of pay' for purposes of calculating overtime pay." (*Id.*) This resulted in underpayment of overtime compensation to workers. Additionally, Plaintiff alleges that workers were from time to time unable to take rest breaks due to severe time pressures. (Compl. ¶ 13.)

Based on these alleged practices, Plaintiff filed the instant suit, alleging claims of: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Business and Professions Code §§ 17200 et seq.; (2) failure to pay minimum wage; (3) failure to provide accurate itemized statements; and (4) waiting time penalties. (Compl. ¶¶ 38-77.) Plaintiff specifically pleads that the amount in controversy for the aggregate claim of the California class is under $5 million. (Compl. ¶ 4.)

On August 11, 2017, Defendant removed the case to federal court, asserting that jurisdiction as proper under CAFA. (Not. of Removal ¶ 9.) In asserting that the amount in controversy exceeded $5 million, Defendant estimated that: (1) Plaintiff's waiting time penalties claim was worth $9,693,081.60; (2) Plaintiff's wage statement claim was worth $7,346,550; (3) Plaintiff's unpaid minimum wage claim was worth $2,215,893.75; and (4) Plaintiff's attorney's fees claim was worth $4,813,881.34, or 25% of the estimated damages. (Not. of Removal ¶¶ 26-32.)

On August 23, 2017, Plaintiff filed the instant motion to remand, arguing that Defendant had failed to substantiate its claims that there is diversity of citizenship, more than 100 class members, and that the amount in controversy was over $5 million. (Plf.'s Mot. at 2.) On September 6, 2017, Defendant filed its opposition. (Def.'s Opp'n, Dkt. No. 15.) On September 13, 2017, Plaintiff filed his reply brief, which addressed only the amount in controversy. (Plf.'s Reply, Dkt. No. 17.)

## II. LEGAL STANDARD

In general, "a defendant seeking to remove a case to a federal court must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting 28 U.S.C. § 1446(a).) When a defendant removes a case, the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. From there, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 553. If, however, the plaintiff contests the amount in controversy, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury. Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). The defendant who seeks removal has the burden to show by a

preponderance of evidence that the amount in controversy is adequate. *Ibarra*, 775 F.3d at 1197. To do so, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* (internal quotation omitted). Under this standard, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

With respect to CAFA, "CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs." *Ibarra*, 775 F.3d at 1195. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

### III. DISCUSSION

#### A. Number of Class Members and Diversity

In his motion, Plaintiff challenged Defendant's assertions of diversity of citizenship and the number of class members, on the ground that the Notice of Removal lacked information and evidence. (Plf.'s Mot. at 3-4.) In opposition, Defendant provides a declaration by its Corporate Officer and Assistant Secretary, Brian Beechem, which states that Defendant is a corporation incorporated under Delaware law and headquartered in Ohio. (Beechem Decl. ¶ 4, Dkt. No. 15-1.) Defendant also provides a declaration by its HRIS Systems and Projects Analyst, Daniel Higley, which states that per Defendant's timekeeping data and employment/payroll records, there were 5,750 non-exempt employees working as bus drivers in California from July 6, 2013 through July 21, 2017. (Higley Decl. ¶ 3, Dkt. No. 15-2.) In his reply, Plaintiff in turn does not respond or challenge the provided declarations.

The Court therefore concludes that based on the provided declarations, Defendant has established by a preponderance of the evidence that this case meets CAFA's diversity and numerosity requirements.

4

**B.     Amount in Controversy**

The parties dispute whether Defendant has adequately shown that CAFA's $5 million amount in controversy requirement is met. In its opposition brief, Defendant modifies its estimate from the Notice of Removal, and now calculates Plaintiff's waiting time penalties claim as $6,160,126.83, the wage statement claim as $7,346,550, the minimum wage claim as $2,280,685.09, and the attorney's fees as $5,209,829.43. (Def.'s Opp'n at 8, 10, 12, 14.) The Court finds that Defendant's estimate of the wage statement claim is adequate, and that this claim alone is sufficient to satisfy CAFA's $5 million requirement.

California Labor Code § 226(a) requires that employers provide employees "an accurate itemized statement in writing," which includes the gross wages earned, total hours worked by the employee, all deductions, net wages earned, the inclusive dates of the period for which the employee is paid, the name of the employee and last four digits of the employee's social security number or employee identification number, the name and address of the employer, and all applicable hourly rates in effect during the pay period. If the employer knowingly and intentionally fails to provide accurate wage statements, the employee "is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)," in addition to costs and attorney's fees. Cal. Labor Code § 226(e)(1). Unless the plaintiff demonstrates actual damages resulting from the receipt of an inaccurate wage statement, the limitations period is one year. *See Fong v. Regis Corp.*, No. C 13-4497 RS, 2014 WL 26996, at *6 n.5 (N.D. Cal. Jan. 2, 2014).

Here, Defendant estimates that the wage statement penalties claim alone is worth $7,346,550, over CAFA's $5 million amount in controversy requirement. (Def.'s Opp'n at 10; Not. of Removal ¶ 28.) In support, Defendant relies primarily on Mr. Higley's declaration, which states that Defendant's "payroll records show that from July 6, 2016 to July 21, 2017, First Student issued 75,301 wage statements to 3,671 non-exempt California bus drivers." (Higley Decl. ¶ 7.) Based on these numbers, Defendant calculates the $50 penalty as $183,550 (3,671 initial pay period violations x $50), and the subsequent pay period violations as $7,163,000 (71,630

5

subsequent pay period violations x $100), for a total of $7,346,550. (Def.'s Opp'n at 10 n. 4.)

Plaintiff disputes the estimated wage statement penalties in three respects. First, Plaintiff argues that Defendant does not explain how they came to their estimates of 75,301 wage statements and 3,671 bus drivers. (Plf.'s Mot. at 6; Plf.'s Reply at 4.) According to Mr. Higley's declaration, however, this does not appear to be an estimate, but instead seems to be actual numbers drawn from the payroll records itself. (Higley Decl. ¶ 7.) At the hearing, Defendant confirmed that this number was based on a tally of the actual number of paychecks and drivers, and Plaintiff conceded that this information addressed Plaintiff's concerns about the numbers. The Court finds these numbers adequate.

Second, Plaintiff contends that the Notice of Removal failed to state that the 3,671 bus drivers were non-exempt employees, and therefore part of the class definition. (Plf.'s Mot. at 6.) In response, Defendant provides a declaration by its Senior Vice President of the Southwest Region, Liz Sanchez, which states that "school bus drivers are classified as non-exempt from overtime." (Sanchez Decl. ¶ 2, Dkt. No. 15-3.) Plaintiff does not challenge the declaration, and the Court finds it sufficient to establish that the 3,671 bus drivers fall within Plaintiff's class definition.

Finally, Plaintiff argues that Defendant cannot assume a 100% violation rate because Plaintiff's complaint alleges that Defendant only issued inaccurate wage statements "[f]rom time to time." (Plf.'s Mot. at 6; Plf.'s Reply at 4; *see also* Compl. ¶ 68.) Plaintiff also questions whether those 75,301 wage statements might include statements that contain only bonus payments. (Plf.'s Reply at 4.)[1] The Court disagrees. While Plaintiff may have pled that the inaccurate wage statements were only issued "[f]rom time to time," this allegation is contrary to the basis of Plaintiff's wage statement claim, *i.e.*, the off the clock work. Specifically, Plaintiff alleges that "Defendant failed to list the total hours worked by Plaintiff and other California Labor Sub-Class Members **each** pay period because of Defendant's policy that required California Labor Sub-Class

---

[1] Plaintiff also asserts that Defendant failed to explain which of the 75,301 wage statements were issued on a weekly or bi-weekly basis, but does not explain why this distinction is significant or how it would affect Defendant's calculation of the amount in controversy. (Plf.'s Reply at 4.)

6

Members to work off the clock . . . ." (Compl. ¶ 68 (all caps omitted and emphasis added).) This off the clock practice, in turn, refers to Defendant's "**mandatory**" practice of requiring workers to arrive at a pre-designated time, where they would have to wait in line to retrieve their route assignments and bus keys. (Compl. ¶ 9 (emphasis added).) Only after they got on the bus and logged onto the time keeping system were they considered on the clock. (*Id.*) In other words, Plaintiff has alleged a practice requiring off the clock work that would occur every day a worker drove a school bus. Plaintiff does not assert that the wage statements ever included this off the clock work, or that there are ever pay periods in which a worker was not required to do this off the clock work. Thus, based on Plaintiff's own allegations, it is reasonable to assume that every wage statement would be in violation, based on Defendant's "mandatory" practice of requiring workers to arrive at pre-designated times, which resulted in off the clock work that would not be reflected in "each" pay period. (Compl. ¶¶ 9, 68.)

Moreover, Plaintiff provides no evidence in support of his allegation that the inaccurate wage statements were only issued "[f]rom time to time," or that there were ever any wage statements that contained only bonus payments. Plaintiff does not, for example, provide a declaration that he ever received an accurate wage statement or a wage statement that contained only bonus payments. At the hearing, Plaintiff's counsel acknowledged that they did not have all of Plaintiff's wage statements, and could not state if there were any wage statements that were accurate or contained only bonus payments. In the absence of any evidence that Defendant issued any accurate wage statements, particularly in light of Plaintiff's claim that Defendant required off the clock work in each pay period, the Court finds that the preponderance of evidence shows that there was a 100% violation rate.

The Court concludes that Defendant has demonstrated by a preponderance of the evidence that the wage statement penalty claim is worth $7,346,550, which is more than CAFA's $5 million requirement. *Compare with Fong*, 2014 WL 26996, at *6 (concluding that the wage statement penalty claim estimate was adequate where the defendant alleged that 2,626 class members worked an aggregate of 76,477 pay periods during a two-year statutory period, resulting in an amount of $6,646,500 for two years or $3,834,000 over one year). Thus, Defendant has satisfied

CAFA's jurisdictional requirements based solely on the wage statement penalty claim.

Because Defendant has established, by a preponderance of evidence, all three of CAFA's jurisdictional requirements, the Court DENIES Plaintiff's motion to remand.

### IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiff's motion to remand.

IT IS SO ORDERED.

Dated: October 6, 2017

KANDIS A. WESTMORE
United States Magistrate Judge