UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BHANU VIKRAM,<br><br>Plaintiff,<br><br>v.<br><br>FIRST STUDENT MANAGEMENT, LLC,<br><br>Defendant. | Case No. 17-cv-04656-KAW<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. No. 47 |

Plaintiff Bhanu Vikram brings the instant putative class action against Defendant First Student Management, LLC, alleging violations of various California labor laws. (*See* Second Amended Compl. ("SAC"), Dkt. No. 56.) Pending before the Court is Plaintiff's motion for preliminary approval of a settlement agreement between the parties. (Mot. for Prelim. App., Dkt. No. 47.) Upon consideration of the parties' filings, as well as the arguments presented at the March 7, 2019 hearing, and for the reasons stated below, Plaintiff's motion for preliminary approval is GRANTED.

## I. BACKGROUND

### A. Factual Background

Defendant is a school bus operator that provides student transportation services for schools and districts. (SAC ¶ 2.) Plaintiff alleges that Defendant failed to accurately calculate and pay wages due in two ways. (SAC ¶ 6.) First, Plaintiff alleges that employees were required to appear at the bus yard at a pre-designated time and stand in line to receive route assignments and keys. (SAC ¶ 7.) Employees then walked to their assigned bus and logged into Defendant's time-keeping system. Between Plaintiff's arrival at the bus yard at the pre-designated time and logging in, an average of 5-10 minutes would have passed. (SAC ¶ 7.) Employees, however, were not

1 paid for this time.

Second, Plaintiff alleges that Defendant had a non-discretionary incentive program that paid employees incentive wages based on employees meeting various performance goals. (SAC ¶ 9.) One performance goal involved assisting handicapped children. (SAC ¶ 9.) Specifically, Plaintiff and other employees who were required to use the lift assist with handicapped children were compensated with incentive pay in the amount of $7.00/day. (SAC ¶ 9.) This payment was called "lift pay" or "comm" pay. (SAC ¶ 9.) Plaintiff alleges that Defendant failed to include this incentive compensation as part of their employees' "regular rate of pay" when calculating overtime. (SAC ¶ 9.)

### B. Procedural Background

On July 6, 2017, Plaintiff filed the instant case, alleging violations of various California labor laws. (*See* Compl. at 1, Dkt. No. 1.) On August 11, 2017, Defendant removed the case. (Not. of Removal, Dkt. No. 1.)

In April 2018, the parties participated in private mediation with Gig Kyriacou. (Mot. for Prelim. App. at 4.) The parties reached an agreement to resolve the case. On December 4, 2018, Plaintiff filed the instant motion for preliminary approval. On December 20, 2018, the Court issued an order requiring supplemental briefing on the motion for preliminary approval. (Dec. 20, 2018 Ord., Dkt. No. 50.) On January 4, 2019, Defendant's counsel filed a declaration stating that Defendant had served a Notice of Proposed Settlement of Class Action pursuant to the Class Action Fairness Act ("CAFA"). (Dkt. No. 51.) On January 7, 2019, Plaintiff filed a supplemental declaration in response to the Court's order for supplemental briefing. (Supp. Nordrehaug Decl., Dkt. No. 52.) In the supplemental declaration, Plaintiff made clear that the only claim being settled involved comm payments, or the "bonus paid to drivers required to lift assist [sic] handicapped children." (Supp. Nordrehaug Decl. ¶ 4a.)

On January 23, 2019, the Court issued a second order requiring supplemental briefing, noting that the operative complaint "contains no facts related to 'comm' payments, lift payments, or bonuses in assisting handicapped children." (Jan. 23, 2019 Ord. at 1, Dkt. No. 53.) The Court requested authority on how the Court could approve a settlement that settled claims not alleged in

2

the complaint. (*Id.* at 1-2.) On January 31, 2019, Plaintiff filed a supplemental brief, clarifying for the first time that the lift and comm payments were a type of incentive compensation. (Supp. Brief, Dkt. No. 54 at 1.) Plaintiff stated that he could file an amended complaint that provided further specificity. (*Id.* at 2.) On February 5, 2019, the Court ordered Plaintiff to file an amended complaint that contained facts specific to the claims being settled. (Feb. 5, 2019 Ord. at 1-2, Dkt. No. 55.) On February 13, 2019, Plaintiff filed the operative complaint.

### C. Settlement Agreement

Under the terms of the settlement agreement ("Settlement"), Defendant agrees to pay a "Gross Settlement Amount" of $435,000. (Nordrehaug Decl., Exh. 1 ("Settlement Agreement") ¶¶ I.Q., III.A, Dkt. No. 47-1.) Of the Gross Settlement Amount, Plaintiff's counsel intends to seek an award of 25%, or $108,750, as well as expenses not to exceed $10,000. (Settlement Agreement ¶ III.B.2.) The Gross Settlement Amount also includes a $10,000 Class Representative Service Payment for the named Plaintiff and $10,000 for settlement administration costs. (Settlement Agreement ¶¶ III.B.1, III.B.4.) Finally, the Gross Settlement Amount includes $10,000 in penalties under California's Private Attorneys General Act ("PAGA"); $7,500 shall be paid to the California Labor and Workforce Development Agency ("LWDA"), and $2,500 will be part of the Net Settlement Amount for distribution to the participating class members. (Settlement Agreement ¶ III.B.3.) This leaves a Net Settlement Amount of $288,750. (Settlement Agreement ¶¶ III.A-B.)

The Settlement will be calculated by: (1) dividing the Net Settlement Amount by the total workweeks worked by all participating class members during the class period, including a workweek enhancement for former employees, and (2) multiplying the result by each individual's total number of workweeks worked during the class period. (Settlement Agreement ¶ III.C.2.) Former employees will receive a 2.0 enhancement multiplier of their workweeks to account for their California Labor Code § 203 waiting time penalty claim. (Settlement Agreement ¶ III.C.2.)

The claims being released by the Settlement are limited to the "failure to pay overtime wages associated with the payment of lift pay, and all related and derivative claims based thereon, up to June 15, 2018, and which were alleged, or could have been alleged, in the original

3

Complaint or any amended Complaint filed in the Action." (Settlement Agreement ¶ I.X.) All other claims, including claims related to uncompensated time between arriving at the bus yard and logging in, will be dismissed without prejudice. (Settlement Agreement ¶ III.F.1.) The class is limited to individuals who worked for Defendant as bus drivers at Defendant's San Francisco location between July 6, 2013 and June 15, 2018, as the lift and comm payments only occurred at the San Francisco location. (Settlement Agreement ¶ 1.B; Supp. Brief at 1.)

Once the Court grants preliminary approval, the Settlement Administrator is responsible for mailing a Class Notice Packet to the class members. (Settlement Agreement ¶ III.E.2.b.) If a Class Notice Packet is returned because of a wrong address, the Settlement Administrator will search for a more current address and re-mail the Class Notice Packet. (Settlement Agreement ¶ III.E.2.c.)

The class is bound by the settlement unless they timely submit an exclusion letter. (Settlement Agreement ¶ III.E.3.c.) Participating class members may also challenge the number of workweeks the Class Notice allocates to them by filing a dispute with the Settlement Administrator. (Settlement Agreement ¶ III.3.a.)

Individuals who do not opt out will receive a settlement check. (Settlement Agreement ¶ III.E.3.c.) The settlement check will bear a disclaimer stating: "By endorsing, cashing or depositing this check, I consent to join the Class in *Vikram v. First Student Management, LLC*. for purposes of releasing claims under the terms of the Settlement Agreement and for purposes of releasing claims under the Fair Labor Standards Act. By endorsing, cashing or depositing this check I fully and completely release all claims I may have against the Released parties under the Fair Labor Standards Act as of June 15, 2018, for failure to pay overtime wages based on the failure to include lift pay in the regular rate as well as all other claims that are covered by the Settlement Agreement." (Settlement Agreement ¶ III.F.2.) Cashing the settlement check will be deemed an opt-in for purposes of settling and releasing Fair Labor Standards Act ("FLSA") claims related to lift and comm payments. Class members will have 180 days to cash the settlement check; if the check is not cashed in that time, the funds from uncashed checks will be paid to the Department of Industrial Relations Unpaid Wage Fund in the name of the participating class

4

members. (Settlement Agreement ¶ III.E.10.)

## II. LEGAL STANDARD

Per Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The purpose of requiring court approval "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, before approving a settlement, the Court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This inquiry:

> requires the district court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.

*Id.*; *see also Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (same).

Furthermore, the Ninth Circuit has recognized that where no class has been formally certified, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("when . . . the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness'"). This more "exacting review" is required "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (internal quotation omitted); *see also Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry

than may normally be required under Rule 23(e)").

When applying Rule 23(e), the courts use a two-step process for the approval of class action settlements. First, the Court decides whether the class action settlement deserves preliminary approval. Second, after notice is given to class members, the Court determines whether final approval is warranted. *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121-22 (N.D. Cal. 2016). At the preliminary approval stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Id.*; *see also O'Connor*, 201 F. Supp. 3d at 1122. This determination "requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Cotter*, 176 F. Supp. at 936 (citing *In re High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-LHK, 2014 WL 3917126, at *4 (N.D. Cal. Aug. 8, 2014).

In addition to considering whether the settlement falls within the range of reasonableness, courts in this district also consider whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; [and] (3) does not improperly grant preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation omitted). With respect to the level of scrutiny applied to this determination, "district courts often state or imply that scrutiny should be more lax." *Cotter*, 193 F. Supp. 3d at 1035-36. Several courts in this district have begun to question that "lax review" as "mak[ing] little practical sense." *Id.* at 1036. Instead, these courts suggest that "scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified . . . allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process." *Id.*

## III. DISCUSSION

### A. Class Certification

Before determining the fairness of a class action settlement, the Court must as a threshold matter "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019. The Court must also find that at least one requirement of Rule 23(b) is satisfied. *Id.* at 1022.

The Court finds that for the purposes of approval of the class action settlement, the Rule 23(a) requirements are satisfied. First, numerosity exists because the settlement class includes approximately 350 class members. (Settlement Agreement ¶ III.C.4; *see also Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not").) Second, commonality exists because there are "questions of fact and law which are common to the class," namely whether Defendant miscalculated the regular rate when paying overtime by failing to include the lift and comm payments. Fed. R. Civ. P. 23(a)(2); *see also Hanlon*, 150 F.3d at 1019-20 (noting that the commonality requirement is "permissive" and "has been construed permissively"). Third, typicality exists because the named Plaintiff's claims are "reasonably co-extensive with those of absent class members," as Plaintiff was employed by Defendant in the same position as the absent class members at the San Francisco location, and was subject to the same employment practices concerning regular rate calculation. *See Hanlon*, 150 F.3d at 1020. Finally, adequacy exists because there is no evidence that Plaintiff and Plaintiff's counsel have any conflicts of interest with the proposed class, or that Plaintiff and Plaintiff's counsel will not vigorously prosecute the case on behalf of the class. *See id.* ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

The Court also concludes that the Rule 23(b)(3) requirement is satisfied. Under Rule

7

23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the Court finds that predominance is satisfied because Plaintiff's claims arise from Defendant's alleged policy of failing to properly pay for overtime by not including the lift and comm payments. Further, the Court finds that superiority is satisfied because the alternative method to a class action likely involves "individual claims for a small amount of . . . damages," resulting in most cases involving "litigation costs [that] dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

The Court therefore provisionally certifies the class for settlement purposes.

### B. Preliminary Approval Factors

#### i. Range of Reasonableness

In considering whether the Settlement Agreement falls within the range of possible approval, the Court "primarily consider[s] plaintiffs' expected recovery balanced against the value of the settlement offer." *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016). Here, Plaintiff estimates the miscalculation of overtime at $15,921, waiting time penalties at $336,438, and the wage statement penalties at $205,000, for a total of $557,359. (Supp. Nordrehaug Decl. ¶ 4.) Plaintiff also estimates PAGA penalties at $107,900 for violations of Labor Code § 558, $539,500 for violations of Labor Code § 226.3, and $215,800 for violations of Labor Code § 1198, for a total of $863,200. (Supp. Nordrehaug Decl. ¶ 4h.) Plaintiff notes, however, that Labor Code § 558 and § 1198 are overlapping, such that only one penalty may be assessed. The Gross Settlement Amount of $435,000 represents 78% of the value of the non-PAGA claims, and 30.6% of the California labor law violations and PAGA penalties. Courts in this district have approved settlements with similar discounts, depending on the strength of the plaintiff's case and the risks in pursuing further litigation. *See Viceral*, 2016 WL 5907869, at *7 (approving case which represented 8.1% of the total verdict value).

Plaintiff identifies a number of risks that make the proposed settlement fall within a range of reasonableness. With respect to the overtime claim, Plaintiff explains that liability can be mitigated by the fact that the employees are in a union. (Supp. Brief at 2-3.) Specifically,

8

California Labor Code § 514 states that § 510 -- which defines overtime -- "do[es] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked . . . ." *See also Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (finding that § 510's definition of overtime did not apply where the plaintiffs were covered by a qualifying collective bargaining agreement). Additionally, Plaintiff states there is a risk that California Wage Order 9, which has overtime provisions for transportation workers, may not apply because the overtime provisions do not apply to employees whose hours of service are regulated by Title 13 of the California Code of Regulations, subchapter 1200. (Supp. Brief at 3.) 13 C.C.R. § 1200(a), in turn, states that the provisions of the chapter apply to vehicles listed in California Vehicle Code § 34500, which includes buses, school buses, and school pupil activity buses. (*See id.*)

More significantly, Plaintiff points to the risk of the waiting time and wage statement penalties claims, which requires that the employer's conduct be a "willful" failure to pay wages. Waiting time and wage statement penalties are available only in the absence of a "good faith dispute" as to whether wages are owed. *See Woods v. Vector Mktg. Corp.*, No. C-14-264-EMC, 2015 WL 2453202, at *2-5 (granting summary judgment to the employer on the penalty claims because there was a good faith dispute as to whether such wages were owed, such that the plaintiffs could not as a matter of law establish a "knowing and intentional" violation of § 226 (wage statement penalties) and a "willful" violation of § 203 (waiting time penalties)). Additionally, there is an additional risk that the class would be entitled to no wage statement penalties, as the California Court of Appeal in *Maldonado v. Epsilon Plastics, Inc.* found that "inaccurate wage statements alone do not justify penalties; the plaintiffs must establish injury flowing from the inaccuracy." 22 Cal. App. 5th 1308, 1334 (2018). In so concluding, the *Maldonado* court found that the failure to pay overtime was not a sufficient injury; otherwise, "the proposition that *any* failure to pay overtime at the appropriate rate *also* generates a wage statement injury justifying the imposition of wage statement penalties [will lead to] an apparent unintentional double recovery." *Id.* at 1336. Thus, there is a substantial risk of no recovery to any

Plaintiff on the penalty claims, which are worth the vast majority of the full verdict value of the non-PAGA claims.

Given the substantial risks of no recovery on Plaintiff's most valuable claims -- the waiting time and wage statement penalties -- the Court finds that the proposed settlement falls within the range of reasonableness. This factor thus weighs in favor of preliminary approval.

### ii. Serious, Informed Negotiations

Next, the Court considers how the parties arrived at the settlement, specifically whether the settlement was "the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the parties' settlement was conducted after Defendant provided employment and payroll information. (Nordrehaug Decl. ¶ 20.) With the assistance of a damages expert, Plaintiff's counsel calculated the alleged damages. (Nordrehaug Decl. ¶¶ 18, 20.) The parties then attended mediation with Mr. Kyriacou, an experienced mediator of employment class actions. (Nordrehaug Decl. ¶ 12.) During the mediation, the parties engaged in arms-length negotiations before accepting the mediator's proposal. The Court finds that the parties reached the settlement via an arms-length, non-collusive, negotiated resolution, and that this factor weighs in favor of preliminary approval.

### iii. No Obvious Deficiencies

In its order for supplemental briefing, the Court raised concerns about the amount of the attorney's fees and class representative service payment. (Dec. 20, 2018 Ord. at 1.) With respect to the attorney's fees, Plaintiff's counsel asserts that their lodestar to date is approximately $121,693. (Supp. Nordrehaug Decl. ¶ 3.) As Plaintiff's counsel intends to seek $108,750, this represents a negative multiplier. The Court reserves its consideration of the appropriateness of the attorney's fees for Plaintiff's motion for attorney's fees. Likewise, the Court will review the class representative service payment at the final approval stage; the court notes, however, that "[s]everal courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, Case No. 08-cv-5198-EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (internal quotation omitted). At the hearing, the Court also raised concerns regarding whether Plaintiff recognized

which claims are being settled, given his focus on the uncompensated time waiting for bus route assignments. The Court also notes that Plaintiff did not attend the mediation. When moving for final approval, Plaintiff must be prepared to explain why he is entitled to more than the $5,000 benchmark amount, citing to specific cases with similar facts as to the amount of time spent by Plaintiff.

The Court also required that Plaintiff address whether he submitted a copy of the settlement to the LWDA, and whether he had received any comments. (Dec. 20, 2018 Ord. at 3.) Plaintiff confirmed that a copy of the settlement agreement and the motion for preliminary approval had been sent to the LWDA, and that no response had been received. (Supp. Nordrehaug Decl. ¶ 5.) At the hearing, Plaintiff confirmed no comments had been received. Likewise, the Court requested confirmation that the CAFA Notice had been sent, which has now been verified by Defendant. (Dec. 20, 2018 Ord. at 3-4; Dkt. No. 51.)

Finally, the Court requested changes to the Class Notice and procedures for objecting to the settlement, which the parties have modified accordingly. (*See* Supp. Nordrehaug Decl., Exh. 2.) The Court finds that the parties' changes have addressed the Court's concerns, and thus this factor weighs in favor of preliminary approval.

### iv. Preferential Treatment

Finally, the Court considers whether the Settlement provides preferential treatment to any class members. The Court concludes that the Settlement does not. Although the Settlement provides for a 2.0 multiplier for former employees, this reflects the value of the waiting time penalty claim, which accounts for more than half of the value of the non-PAGA claims. Additionally, a 2.0 multiplier is fair given the risk of proving the waiting time penalty claim, including demonstrating that there was a "willful" violation. Accordingly, the Court finds that the proposed multiplier does not result in preferential treatment, but instead reflects both the increased value of the waiting time penalty claim of former employees, as well as its associated risks. This factor weighs in favor of preliminary approval.

### v. Notice Procedure

The Court has reviewed the content of the proposed notices, including the redline changes

submitted with the parties' supplemental brief, and finds that they are adequate to inform the putative class and collective action members of the terms of the Settlement Agreement and their ability to object. At the hearing, the Court raised concerns regarding the Class Notice's requirement that class members make a timely written request to speak at the Final Approval hearing before they may speak. The parties agreed to revise the Class Notice to remove this requirement. Accordingly, the Court approves the proposed notice procedures, with the deletion of the written request requirement.

## IV. CONCLUSION

The Court finds that based on the above factors, preliminary approval is warranted, subject to the additional changes to the notices being made. The Court therefore GRANTS preliminary approval of the parties' proposed Settlement Agreement, including the provisional certification of the class action. The Court APPOINTS, for settlement purposes only, Bhanu Vikram as class representative; Blumenthal Nordrehaug Bhowmik De Blouw LLP as class counsel; and ILYM Group, Inc. as Settlement Administrator. The Court APPROVES the revised notice provided by the parties, with the removal of the requirement that class members make a timely written request to speak at the Final Approval. (*See* Dkt. No. 84.) The Court sets the following schedule:

| Action: | Date: |
|---|---|
| Defendants to provide Class Member list to Settlement Administrator | 15 business days from the date of this order |
| Settlement Administrator to mail Notice Packets | 15 business days after receiving Class Member List |
| Class Counsel to file Motion for Attorney's fees, costs, and class representative service awards | 35 days before the Final Approval Hearing |
| Deadline for Class Members to opt-out and/or object to the Settlement Agreement | 45 days after mailing of Class Notice Packets |
| Plaintiffs to file Motion for Final Settlement Approval | 35 days before the Final Approval Hearing |
| Final Approval Hearing | July 18, 2019 at 1:30 p.m. |

IT IS SO ORDERED.

Dated: March 7, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge