1  **BLUMENTHAL NORDREHAUG BHOWMIK
    DE BLOUW LLP**
2    Norman B. Blumenthal (State Bar #068687)
     Kyle R. Nordrehaug (State Bar #205975)
3    Aparajit Bhowmik (State Bar #248066)
4  2255 Calle Clara
   La Jolla, CA 92037
5  Telephone: (858)551-1223
   Facsimile: (858) 551-1232

6  Attorneys for Plaintiff

7

8

9

10

11            **UNITED STATES DISTRICT COURT**

12           **NORTHERN DISTRICT OF CALIFORNIA**

13

14  BHANU VIKRAM, an individual, on        | CASE No. **4:17-CV-04656-KAW**
    behalf of himself, and on behalf of all
15  persons similarly situated,
                                            **PLAINTIFF'S NOTICE OF
16              Plaintiff,                   MOTION AND MOTION FOR
                                            FINAL APPROVAL OF CLASS
17  vs.                                     SETTLEMENT;**

18  FIRST STUDENT MANAGEMENT,              **MEMORANDUM OF POINTS AND
    LLC, a Limited Liability Company, and  AUTHORITIES IN SUPPORT**
19  DOES 1 through 50, Inclusive,
                                            Hearing Date: August 29, 2019
20              Defendant.                   Hearing Time: 1:30 p.m.

21                                          Magistrate Judge Kandis A. Westmore

22                                          Oakland Courthouse,
23                                          Courtroom 4 - 3rd Floor

24

25

26

27

28

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE THAT** on August 29, 2019, at 1:30 p.m. in the United States District Court for the Northern District of California, located at the Oakland Courthouse, Courtroom 4 - 3rd Floor, 1301 Clay Street, Oakland, CA 94612, before Magistrate Judge Kandis A. Westmore, Plaintiff Bhanu Singh ("Plaintiff") will move for final approval of the proposed Class Settlement with Defendant First Student Management LLC ("Defendant").

This motion is brought in accordance with the Orders dated March 7, 2019 and May 29, 2019 [Doc. No. 57 and 62] and Fed. R. Civ. P. Rule 23(h).  This motion is unopposed and based on the Class Action Settlement Agreement ("Agreement") between the parties filed concurrently with this motion.

The motion will be based on this Notice of Motion, the Memorandum of Points and Authorities, the Declaration of Norman Blumenthal and attached exhibits, the Declaration of Stephanie Molina (Settlement Administrator), the argument of counsel, and upon such other material contained in the file and pleadings of this action.

This motion is made following the conference of counsel wherein the parties agreed on the filing of this unopposed motion based upon the Agreement.

Respectfully submitted.

Dated: July 25, 2019          BLUMENTHAL NORDREHAUG BHOWMIK
DE BLOUW LLP

By:    */s/ Kyle Nordrehaug*
             Norman B. Blumenthal
             Kyle R. Nordrehaug
             Attorneys for Plaintiff

1

2

# **TABLE OF CONTENTS**

3

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF THE LITIGATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   THE SETTLEMENT BEFORE THE COURT . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS
       COURT TO GRANT FINAL APPROVAL . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE . . . . . . 12

       A.    The Test For Fairness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.    The Settlement Satisfies the Test For Fairness . . . . . . . . . . . . . . . . . . 13

             1.    The Investigation and Discovery are Sufficient to Allow
                   Counsel and the Court to Act Intelligently . . . . . . . . . . . . . . . . 13

             2.    The Settlement Was Reached Through Arm's Length
                   Bargaining . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

             3.    Counsel is Experienced in Similar Litigation . . . . . . . . . . . . . . 16

             4.    There are No Objections to the Settlement and
                   No Opt-Outs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

             5.    The  Risk, Expense, Complexity, and Likely Duration of
                   Further Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s):**

*Armstrong v. Board of School Directors*,
   616 F.2d 305, 325 (7th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cotton v. Hinton*,
   559 F.2d 1326, 1331 (5th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
   213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

*Ferguson v. Randy's Trucking, Inc.*,
   2016 U.S. Dist. LEXIS 32719 (E.D. Cal. 2016) . . . . . . . . . . . . . . . . . . . . . . . 18

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
   630 F. Supp. 482, 489 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Glass v. UBS Fin. Servs.*,
   2007 U.S. Dist. LEXIS 8476 (N.D.Cal. Jan. 27  2007) . . . . . . . . . . . . . . . 8, 14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1026 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Austrian & German Bank Holocaust Litigation*
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Dept. Of Energy Stripper Well Exemption Litig.*,
   653 F.Supp. 108, 115 (D.Kan.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. Lexis 13555 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kirkorian v. Borelli*,
   695 F. Supp. 446, 451 (N.D. Cal. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Laskey v. Int'l Union*,
   638 F.2d 954 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lyons v. Marrud, Inc.*,
   1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. 1972) . . . . . . . . . . . . . . . . . . . . . . . 13

*Maldonado v. Epsilon Plastics*, Inc.,
   22 Cal. App. 5th 1308 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Officers for Justice v. Civil Service Com'n, etc.*,
   688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414, 424-25 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Reed v. General Motors Corp.*,
    703 F.2d 170, 175 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Santos v. TWC Admin. LLC*,
    2014 U.S. Dist. LEXIS 199358 (C.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . 18

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stovall-Gusman v. W.W. Granger, Inc.*,
    2015 U.S. Dist. LEXIS 78671 (N.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . 9

*Waits v. Weller*,
    653 F.2d 1288 (9th Cir 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13


**Statutes, Rules and Regulations:**

California Business & Professions Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

California Labor Code § 226 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 1197 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 1197.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code § 2698 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. Rules Civ. Proc., rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10


**Secondary Authorities:**

*Manual for Complex Litigation, Second* §30.44 (1993) . . . . . . . . . . . . . . . . . . . . . . 10

Newberg & Conte, *Newberg on Class Actions*, (3d ed. 1992) §11.41 . . . . . . . . . . . 9

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3    Plaintiff Bhanu Singh ("Plaintiff") and Defendant First Student Management LLC

4  ("Defendant") have reached a class settlement.  Under the terms of the Class Action

5  Settlement Agreement ("Agreement"), Defendant agrees to pay Four Hundred

6  Thirty-Five Thousand Dollars ($435,000) ("Gross Settlement Amount") in consideration

7  for the settlement and the release of the Class Members' claims. This Court preliminarily

8  approved the settlement by Order dated March 7, 2019 [Doc. No. 57].

9    In accordance with the preliminary approval order, the required notice of the

10  proposed settlement was disseminated to the 335 individuals in the Class.  The result is

11  that there are no objections and no opt outs. Three (3) Class Members filed statements

12  that purported to "object" but in fact are actually disputes as to their workweeks and

13  make no actual objection to the settlement itself.  [Doc. No. 64, 65 and 66].  As such, the

14  Settlement Administrator is handling these as disputes and the disputes have been

15  accepted such that they are getting credit for the workweeks they claimed.  As a result,

16  the entire Class will be participating in the Settlement and will be sent a payment.  The

17  details of the notice administration process are set forth in a Declaration of Stephanie

18  Molina filed with this motion.

19    The purpose of this Final Approval Hearing is to determine whether the proposed

20  settlement of the litigation should be finally approved and for approval of the award of

21  attorneys' fees and costs to be paid to Class Counsel and the Plaintiff's service award.

22  Plaintiff respectfully submits this Memorandum in support of final approval and the

23  proposed entry of the Order granting final approval and judgment in this class action.[1]

24

25    [1] Previously filed was the Motion for Award of Attorneys' Fees, Costs and Service

26  Award. [Doc. No. 63].  A detailed discussion of the background of the case, the major
events of the litigation, the settlement negotiations, the terms of the proposed Settlement

27  and its benefit to Class Members is set forth in the Declaration of Norman Blumenthal

28  ("Decl. Blumenthal"), filed herewith.

## II.   SUMMARY OF THE LITIGATION

On July 6, 2017, Plaintiff filed the Complaint against Defendant in the Superior Court of the State of California, County of San Francisco.  The Complaint generally alleged that with respect to bus drivers, Defendant (1) violated the California Business and Professions Code §17200 et seq. by failing to pay for all hours worked and failing to properly pay overtime on bonus pay in violation of California law and the Fair Labor Standards Act; (2) failed to pay minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; (3) failed to provide accurate itemized wage statements in violation of California Labor Code § 226; and, (4) failed to timely provide wages due in violation of California Labor Code §§ 201, 202, and 203.  (Decl. Blumenthal, ¶ 6(a).)

On August 11, 2017, Defendant removed the Action to federal court.  On February 12, 2018, Plaintiff filed a First Amended Complaint adding a claim under the Private Attorney General Act, Cal. Labor Code §§ 2698 et seq. ("PAGA").  On March 5, 2018, Defendant filed an answer to the First Amended Complaint generally denying all claims and asserting 45 affirmative defenses.  Plaintiff moved to remand the Action, however, this motion was denied by the Court.  [Doc. No. 19].  (Decl. Blumenthal, ¶ 6(b).)

During the course of litigation, the Parties each served discovery.  The Parties engaged in an exchange of information and documents were produced.  The Parties appeared at the Initial Case Management Conference.  Thereafter, The Parties agreed to ADR before a neutral mediator in an attempt to resolve the Action.  (Decl. Blumenthal, ¶ 6(c).)

In the litigation of the Action, Plaintiff and Defendant have engaged in substantial investigation in connection with the Action, including the detailed investigation and the exchange of information regarding the number of possible class members, Defendant's payroll information for the Class, and other relevant issues.  Class Counsel has thoroughly analyzed the value of the Class Members' claims during the prosecution of this Action.  This discovery, investigation, and prosecution has included, among other things, (a) multiple meetings and conferences with Plaintiff; (b) inspection and analysis

of the documents and materials produced by Plaintiff and Defendant; (c) analysis of the various legal positions taken and defenses raised by Defendant; (d) investigation and law and motion regarding class treatment of the claims; (e) analysis of potential class-wide damages; (f) research of the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (g) the exchange of information through informal discovery; and, (h) assembling data for calculating damages, including retaining an expert for this calculation. The investigations and discussions by counsel have been more than sufficient to give the Plaintiff and Class Counsel a sound understanding of the merits of their positions and to evaluate the value of the claims of the Class Members in light of the defenses to them. Plaintiff and Class Counsel believe that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interests of the Class in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendant would prevail on its defenses, and numerous potential appellate issues. (Decl. Blumenthal, ¶ 6(d).)

As detailed during Preliminary Approval, Class Counsel has thoroughly analyzed the value of the Class Members' claims during the prosecution of this Action. The investigation conducted in this matter, as well as discussions between counsel, have been more than sufficient to give the Plaintiff and Class Counsel a sound understanding of the merits of their positions and to evaluate the claims of the Class Members in light of the defenses to them. Plaintiff and Class Counsel believe that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, the likelihood that Defendant would prevail on its defenses, and numerous potential appellate issues. (Decl. Blumenthal, ¶ 6(e).)

Defendant does not admit any liability and denies and wrongdoing and denied that the Class Members are entitled to any damages. Defendant denies any and all allegations

relating to this matter, including, among other things, that it has failed to properly compensate employees, or that it otherwise violated its legal obligations. Defendant has asserted many affirmative defenses, including that the claims were based on individualized facts and were not appropriate for class certification. Defendant maintains that it has acted lawfully at all times. (Decl. Blumenthal, ¶ 6(f).)

On April 23, 2018, the Parties participated in an all-day mediation presided over by Gig Kyriacou, an experienced mediator of employment class actions. During the mediation, each side, represented by its respective counsel, engaged in arms-length negotiations with the assistance of the mediator. At the conclusion of the mediation, the Parties both accepted the mediator's proposal. With further assistance from the mediator, the Parties reached a mutually agreeable Memorandum of Understanding. The Parties then negotiated and prepared the Agreement which sets forth the final terms of Settlement for this Court's consideration. (Decl. Blumenthal, ¶ 6(g).)

The Class is defined as "all individuals who worked for Defendant as bus drivers at Defendant's San Francisco location in California at any time from July 6, 2013 to June 15, 2018 ("Class Period")." (Agreement at ¶ I(B).) This Court certified the Class for settlement purposes. (Order at pages 7-8 [Doc. No. 57].)

Class Counsel has conducted a thorough investigation into the facts of the class action, including a review of relevant documents and data and a diligent investigation of the Class Members' claims against Defendant. Class Counsel also retained an expert to prepare a damage valuation in advance of mediation. Based on the foregoing documents and data, and their own independent investigation and evaluation, Class Counsel is of the opinion that the settlement with Defendant for the consideration and on the terms set forth in the Agreement is fair, reasonable, and adequate in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendant, and numerous potential appellate issues. The parties and their counsel recognize that, in the absence of an approved settlement, they would face a protracted litigation course, including a contested motion for certification, motions for summary

1  judgment, and trial and appellate proceedings that would consume time and resources
2  and present each of them with ongoing litigation risks and uncertainties.  (Decl.
3  Blumenthal at ¶ 7(a).)

4       Settlement negotiations took place between experienced counsel and were
5  contentious and arm's length.  Plaintiff and Class Counsel believe that this settlement is
6  fair, reasonable and adequate.  By reason of the settlement, Defendant agrees to pay the
7  Gross Settlement Amount of Four Hundred Thirty-Five Thousand Dollars ($435,000)
8  as provided by the Agreement.  (Decl. Blumenthal at ¶ 7(b).)

9       After the settlement negotiations, the specific terms of the Agreement required
10  additional negotiation before the final written agreement could be signed.  Even after the
11  parties reached an agreement as to the basic terms, Class Counsel had to ensure that the
12  terms of the final settlement agreement were fair to every member of the Class and
13  retained the requisite opportunities for notice, exclusion, and objection in accordance
14  with class action law.  (Decl. Blumenthal  ¶ 7(c).)

15       By November 2018, the settlement was finalized and executed.  Class Counsel
16  filed the preliminary motion requesting Court approval of the settlement. [Doc. No. 47].
17  By Order dated December 20, 2018, the Court requested additional information and
18  certain revisions to the Class Notice.  Plaintiff filed a Supplemental Declaration with the
19  revised Class Notice on January 7, 2019 [Doc. No. 52].  By the Order dated March 7,
20  2019, the Court granted preliminary approval of the settlement and approved the mailing
21  of the revised Class Notice.  [Doc. No. 57].  Notice of the settlement providing Class
22  members with notice and an opportunity to claim monetary relief,  to opt out, or to object
23  was then mailed by the Settlement Administrator on June 5, 2019 to the 335 individuals
24  who comprise the Class.  (Decl. Blumenthal at ¶ 7(d).)

25       As detailed in the Declaration of the Settlement Administrator (Stephanie Molina)
26  submitted herewith, out of the 335 individuals in the Class, not one Class Member
27  requested exclusion and there are no actual objections to the settlement.  The three
28  submissions by Class Members [Doc. No. 64, 65 and 66] are actually disputes as to

1    workweek allocations and do not assert objections to the settlement.  As a result, the

2    entire Class will be participating in the Settlement.  The average estimated Class Member

3    payment is $865 and the maximum Class Member payment is $3,166.  (Decl.

4    Blumenthal at ¶ 7(e).)

5    **III.    THE SETTLEMENT BEFORE THE COURT**

6    Defendant agrees to pay the Gross Settlement Amount of Four Hundred

7    Thirty-Five Thousand Dollars ($435,000) in full and complete satisfaction of the claims

8    released by the Agreement.  (Agreement at ¶¶ III(A) and III(F).)  The Gross Settlement

9    Amount will consist of: (i) all payments to Participating Class Members; (ii) the Class

10   Representative Service Payment to the Plaintiff of up to $10,000; (iii) $10,000 for the

11   PAGA Payment; (iv) up to $10,000 for the Settlement Administration Expenses; (v)

12   Class Counsel's approved attorneys' fees of not more than $108,750; and, (vi) Class

13   Counsel's approved litigation costs of not more than $10,000.  The Gross Settlement

14   Amount does not include the employer's share of payroll taxes which shall remain the

15   separate responsibility of Defendant.  (Agreement at ¶ III(A)-(C).) (Decl. Blumenthal at

16   ¶ 3(a).)

17   As per Paragraph I(S) of the Agreement, the Net Settlement Amount is the Gross

18   Settlement Amount less the Court-approved amounts for the Class Representative

19   Service Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses

20   Payment, the LWDA Payment, and the Settlement Administration Expenses.  The entire

21   Net Settlement Amount will be distributed to Participating Class Members, which are

22   those Class Members who do not request exclusion.  (Agreement at ¶¶ I(U) and III(C).)

23   From the Net Settlement Amount, the Settlement Administrator will pay a Settlement

24   Share to each Participating Class Member.  The submission of a claim form is not

25   required to be paid.  (Agreement at ¶ III(C)(1).)  The Settlement Share for each

26   Participating Class Member will be calculated by (a) dividing the Net Settlement

27   Amount by the total workweeks of all Participating Class Members worked during the

28   Class Period, including the workweek enhancement for former employees, to determine

the value of each workweek and (b) multiplying the result by each individual Participating Class Member's total number of workweeks worked during the Class Period. Participating Class Members who are former employees of Defendant as of June 15, 2018 shall be entitled to a 2 multiplier of their workweeks worked during the Class Period as a result of their entitlement to Labor Code § 203 penalties. (Agreement at ¶ III(C)(2).) (Decl. Blumenthal, ¶ 3(b).)

Defendant shall fully fund the Gross Settlement Amount to the Settlement Administrator within five (5) days of the Effective Date of the Settlement. (Agreement at ¶ III(E)(10).) Settlement checks shall remain valid for 180 days from the date of issue. (Agreement at ¶ III(E)(10).) The Parties have stipulated to distribute any funds from uncashed checks to a cy pres beneficiary. [Doc. No. 59]. In accordance with the Order dated May 29, 2019 [Doc. No. 62], the Parties designate Legal Aid Society as an appropriate cy pres beneficiary. The Legal Aid Society is a nonprofit legal services organization protecting workers' rights and is located in San Francisco. (Decl. Blumenthal at ¶ 3(c).)

The release applicable to the Class relates to the allegations in the Action and appears in the Agreement at Paragraph III(F). (Decl. Blumenthal at ¶ 3(d).)

ILYM Group was appointed as Settlement Administrator. All administrative fees, costs and expenses incurred by the Settlement Administrator in connection with administering the Settlement will be deducted from the Gross Settlement Amount. The Settlement Administrator has declared that the expense of administering this settlement is $8,662.50. (Decl. Blumenthal, ¶ 3(e).)

Class Members were permitted the opportunity to object to or comment on the Settlement; or elect not to participate in the Settlement. Class Members who wished to exclude themselves from the Settlement must have sent a written request for exclusion to the Settlement Administrator not later than forty-five (45) after the Settlement Administrator mailed the Notice. (Settlement Agreement at ¶ III(E)(4).) Settlement Class Members who wished to object to the Settlement must have sent their objection to

1  the Settlement Administrator within forty-five (45) of the mailing of the Class Notice.

2  (Settlement Agreement at ¶ III(E)(4).)  There were no opt-outs submitted.  (Declaration

3  of Molina at ¶¶ 11-13.)  Finally, the objections submitted by three Class Members were

4  in fact disputes as to their workweeks (which have been accepted) and did not make any

5  substantive objections to the settlement.  (Decl. Blumenthal ¶ 3(f).)

6          By a separate motion [Doc. No. 63], Plaintiff and his counsel seek, and Defendant

7  has agreed not to oppose, award to the Plaintiff of a Class Representative Service

8  Payment in an amount of $10,000.  (Agreement at ¶ III(B)(1).)  A declaration of the

9  Plaintiff is submitted in support of this request.  In this motion, Class Counsel also seeks

10 an award of an amount not to exceed $108,75, which is 25% of the Gross Settlement

11 Amount, for reasonable attorneys' fees, and for reimbursement of litigation costs of

12 $10,000.  (Agreement at ¶ III(B)(2).) (Decl. Blumenthal ¶ 3(g).)

13         The Settlement in this case represents a substantial benefit for the Class.  In

14 advance of negotiations, Class Counsel received information regarding the number of

15 potential class members, payroll information, and other relevant issues, which permitted

16 Class Counsel to make an intelligent evaluation.  For the individuals whose claims are

17 at issue in this Action, Plaintiff reviewed the data and used information provided by

18 Defendant to determine the potential damage valuation.  With the assistance of a damage

19 expert, DM&A, Plaintiffs calculated the alleged damages they believed they would

20 receive if they prevailed.  As detailed at preliminary approval, using the payroll and class

21 data, Plaintiff's expert calculated that the resulting damages for the miscalculation of

22 overtime was $15,921, the potential waiting time penalties were $336,438, and the

23 potential wage statement penalties were $205,000.  The settlement for the Class, before

24 deductions, represents 78% of these calculated damages estimated by the Plaintiff,

25 assuming these amounts could be proven in full at trial.  This settlement amount is fair

26 and reasonable given the defenses asserted by Defendant.  (Decl. Blumenthal at ¶ 8(e).)

27         In *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27,

28 2007), the federal district court for the Northern District of California approved a

1  settlement of an action claiming unpaid overtime wages where the settlement amount
2  constituted approximately 25% of the estimated actual loss to the class.   In
3  *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 U.S. Dist. LEXIS 78671, at *12 (N.D. Cal.
4  2015), the District Court granted final approval where "the proposed Total Settlement
5  Amount represents approximately 10% of what class might have been awarded had they
6  succeeded at trial."  In *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d
7  454, 459 (9th Cir. 2000), the Court of Appeals affirmed the approval of a class
8  settlement which represented "roughly one-sixth of the potential recovery".  Here the
9  settlement consideration similarly constitutes a much higher percentage of the estimated
10  unpaid wages to the Class.  As a result, the Settlement provides the Class with a recovery
11  that compares favorably to what would have been sought at trial.  (Decl. Blumenthal at
12  ¶ 8(e).)

13      The Settlement is fair, adequate and reasonable to the class and should be finally
14  approved.  (Decl. Blumenthal ¶ 3(h).)  In sum, this settlement valued at $435,000
15  provides the Class Members with the opportunity to receive a substantial recovery.  This
16  result is particularly remarkable in light of the fact that there was also a risk that, if the
17  matter was not settled, Plaintiff would be unable to prevail at trial on behalf of the entire
18  class, and thereby not recover on behalf of any individuals other than themselves. At the
19  time of the mediation, Defendant forcefully opposed the propriety of class certification,
20  arguing that individual issues precluded class certification. While other cases have
21  approved class certification in wage and hour claims, that is not the always the case. As
22  such, class certification in this action would have been hotly contested.  Furthermore,
23  liability in this case was far from certain in light of the defenses asserted by Defendant.
24  (Decl. Blumenthal at ¶ 3(h).)

25  **IV.   THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL**

26      When a proposed class-wide settlement is reached, it must be submitted to the
27
28  court for approval. 2 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992)

at §11.41, p.11-87.   Court approval of a class settlement is considered at a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. *See Manual for Complex Litigation, Second* §30.44 (1993).  During final approval, the court must determine whether the settlement is fair, reasonable and adequate. *See Officers for Justice v. Civil Service Com'n, etc.*, 688 F.2d. 615, 625 (9th  Cir. 1982) and  Fed. Rules Civ. Proc., rule 23(e).

Governing the settlement of class actions, the Federal Rules of Civil Procedure, §23 (e) specifically provides:

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

F.R.C.P. § 23(e)(1)(c).

The decision to approve or reject a settlement is committed to the sound discretion of the trial judge because the trial judge is "exposed to the litigants, and their strategies, positions and proof." *Officers for Justice*, 688 F.2d at 626.

As set forth herein, this Settlement was reached through arm's-length negotiations. The Settlement was negotiated by experienced counsel for the Class and represented by an adequate Class Representative, who protected the interests of the Class Members. There were complex legal and factual issues that placed the ultimate outcome of this litigation in doubt.  Accordingly, the immediate value of the Settlement to the Class Members far outweighs the possibility of relief if this protracted and expensive litigation had continued through trial and appeal.  Finally, the considered judgment of all Parties to the Settlement is that the Settlement is fair and reasonable in light of the immediate benefit provided by the Settlement to the Class Members, which is a conclusion that is reinforced by the response of the Class Members participating in the Settlement.

Settlements of disputed claims are favored by the courts. *Waits v. Weller*, 653 F.2d 1288, 1291 (9th Cir 1981) ("settlement encouraged in appropriate class action

settlements"). In evaluating settlements, the courts have long recognized that compromise is particularly appropriate since such litigation is difficult and notoriously uncertain. Settlement is especially favored in class actions because it minimizes the litigation expenses of all parties and reduces the strain on judicial resources. *Officers for Justice*, *supra*, 688 F.2d at 625 ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."); *In re Dept. Of Energy Stripper Well Exemption Litig.*, 653 F.Supp. 108, 115 (D.Kan.1986) ("It is in the interests of the courts and the parties that there should be an end to litigation and the law favors the peaceful settlement of controversies.")

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, *supra*, 688 F.2d at 625. Under this standard, the court must decide whether the proposed settlement falls within the range of reasonable settlements, taking into account that settlements are compromises between the parties reflecting subjective, unquantifiable judgments concerning the risks and possible outcomes of litigation. *Id.*

In cases such as this one, courts have repeatedly emphasized that there is a strong initial presumption that the compromise is fair and reasonable. *In re Heritage Bond Litig.*, 2005 U.S. Dist. Lexis 13555, at *11 (C.D. Cal. 2005). Courts are advised not to adjudicate the merits of the action, nor substitute their judgment for that of the parties who negotiated the settlement, nor should they reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement. *Id.*, at *11; *Officers for Justice*, *supra*, 688 F.2d at 625.

The essential evaluation is whether, given the risks of litigation and the range of

1  probable results, the settlement, taken as a whole, is fair, reasonable and adequate to all

2  concerned. *Officers for Justice*, *supra* 688 F.2d at 625; *Hanlon v. Chrysler Corp.*, 150

3  F.3d 1011, 1026 (9th Cir. 1998). Here, the facts and circumstances compel the

4  conclusion that the proposed settlement satisfies that standard.

5  **V.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE**

6  **A.    The Test for Fairness**

7  To determine whether a settlement is fair, reasonable, and adequate, courts

8  consider factors such as: "(1) the strength of the plaintiffs' case; (2) the risk, expense,

9  complexity, and likely duration of further litigation; (3) the risk of maintaining class

10  action status throughout the trial; (4) the amount offered in settlement; (5) the extent of

11  discovery completed and the stage of the proceedings; (6) the experience and views of

12  counsel; (7) the presence of a governmental participant; and (8) the reaction of the class

13  members to the proposed settlement." *Churchill v. Gen. Elec.*, 361 F.3d 566, 575 (9th

14  Cir. 2004); see also *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

15  The list of factors is not exhaustive and should be tailored to each case. *Officers*

16  *for Justice*, at 625. Due regard should be given to what is otherwise a private consensual

17  agreement between the parties. *Id.* The inquiry "must be limited to the extent necessary

18  to reach a reasoned judgment that the agreement is not the product of fraud or

19  overreaching by, or collusion between, the negotiating parties, and that the settlement,

20  taken as a whole, is fair, reasonable and adequate to all concerned." *Id,* at 625.

21  "Ultimately, the [trial] court's determination is nothing more than 'an amalgam of

22  delicate balancing, gross approximations and rough justice.' *Id.*

23  The question whether a proposed settlement is fair, reasonable and adequate

24  necessarily requires a judgment and evaluation by the attorneys for the parties based

25  upon a comparison of "'the terms of the compromise with the likely rewards of

26  litigation.'" *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *cert. denied* 464

27  U.S. 818 (1983) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer*

28  *Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). Therefore, many courts

1    recognize that the opinion of experienced counsel supporting the settlement is entitled

2    to considerable weight. *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988);

3    *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger*, 698 F.2d

4    at 74; *Armstrong v. Board of School Directors*, 616 F.2d 305, 325 (7th Cir. 1980); *Fisher*

5    *Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).    For

6    example, in *Lyons v. Marrud, Inc.*, 1972 U.S. Dist. LEXIS 13401, *5 (S.D.N.Y. 1972),

7    the court noted that "[e]xperienced and competent counsel have assessed these problems

8    and the probability of success on the merits.  They have concluded that compromise is

9    well-advised and necessary.  The parties' decision regarding the respective merits of their

10   position has an important bearing on this case."  *Id.* at *5.

**B.    The Settlement Satisfies the Test for Fairness**

1.    <u>The Investigation and Discovery are Sufficient to Allow Class Counsel and the Court to Act Intelligently</u>

The stage of the proceedings at which this settlement was reached militates in favor of final approval of the settlement.  Class Counsel conducted a thorough investigation into the facts of the class action.  Class Counsel began investigating the Class Members' claims before this action was filed.  In advance of mediation, Defendant provided the information regarding the Class that was necessary for Class Counsel to intelligently negotiate a settlement.  Class Counsel engaged in an extensive review and analysis of the relevant documents and data with the assistance of an expert. Accordingly, the agreement to settle did not occur until Class Counsel possessed sufficient information to make an informed judgment regarding the likelihood of success on the merits and the results that could be obtained through further litigation.  There was no need for continued litigation simply to reaffirm what was already known by the negotiating parties.  (Decl. Blumenthal at ¶ 8(d).)

Defendant opposed Plaintiff's claims, and argued that Defendant complied fully with the California Labor Code.  The factual defenses asserted by Defendant presented serious risks to establishing liability.  Plaintiffs obtained information concerning the

1    Class and Defendant's employment practices, as well as necessary data regarding the

2    Class Members.  The parties then decided to initiate negotiations to determine whether

3    the claims were amenable to an early resolution.   (Decl. Blumenthal at ¶ 8(d).)

4          Class Counsel has litigated similar wage and hour cases against other employers.

5    (Decl. Blumenthal at ¶ 2.)  Although Plaintiff and Class Counsel believed that the case

6    had merit, they recognized the potential risks, both sides would face if litigation of this

7    action continued.   As the federal court held in *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist.

8    LEXIS 8476 (N.D.Cal. 2007), where the parties faced uncertainties similar to those in

9    this litigation:

10         In light of the above-referenced uncertainty in the law, the risk, expense,
           complexity, and likely duration of further litigation likewise favors the

11         settlement. Regardless of how this Court might have ruled on the merits of
           the legal issues, the losing party likely  would have appealed, and the

12         parties would have faced the expense and uncertainty of litigating an
           appeal. "The expense and possible duration of the litigation should be

13         considered in evaluating the reasonableness of [a] settlement." See *In re
           Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir.

14         2000). Here, the risk of further litigation is substantial.

15   *Id.* at *12.

16         Negotiations were both contentious and arm's-length.  Defendant vigorously

17   disputed liability and the amount of wages that were claimed to be owed.  Moreover,

18   Defendant argued that class certification could not be obtained.  Maintenance of the class

19   in this action was hotly disputed and would have been subject to a contested motion for

20   certification and even a subsequent motion for decertification.  (Decl. Blumenthal at ¶

21   7(b).)

22         Based on the complexity of the case, the novelty of the legal issues, the substantial

23   risks and uncertainty of the outcome on both liability and certification issues, as well as

24   the need to establish damages, Plaintiff believes that the Settlement is fair, reasonable

25   and in the best interests of the Class Members.  There can be no doubt that counsel for

26   both parties possessed sufficient information to make an informed judgment regarding

27   the likelihood of success on the merits and the results that could be obtained through

28   further litigation, given the relative strengths and weaknesses of their positions.  (Decl.

1  Blumenthal at ¶ 7(f).)

2          2.    <u>The Settlement Was Reached Through Arm's Length Bargaining</u>

3          This settlement was the result of arm's-length negotiations between the parties

4  through their respective attorneys. Defendant disclosed confidential information relating

5  to their organization, their employment practices, the size of the putative class, and

6  payroll and other information for the Class Members.  Class Counsel also examined the

7  applicable law governing these claims and the alleged defenses. This information

8  permitted Class Counsel to evaluate liability and settlement.  After comprehensive legal

9  and factual analysis, including the defenses asserted by Defendant, Class Counsel

10  possessed sufficient information for intelligent evaluation of the case for purposes of

11  settlement.  (Decl. Blumenthal at ¶7(a).)

12          Prior to the initiation of settlement discussions, Class Counsel reviewed and

13  outlined the case based upon the provided information, and determined the conditions

14  of settlement which would be fair and reasonable to the Class.  Class Counsel was

15  experienced in the types of settlement appropriate to resolve these claims, as Class

16  Counsel has previously litigated and settled other similar wage and hour class actions.

17  Initial informal discussions were productive and encouraged both parties to further

18  analyze their positions and to pursue formal negotiations.  (Decl. Blumenthal at ¶7(b).)

19          Following this investigation and discovery, the Parties agreed to discuss resolution

20  through arms-length negotiations through a neutral mediator.  On April 23, 2018, the

21  parties mediated the Action privately with Gig Kyriacou, an experienced mediator of

22  employment class actions.  During the mediation, each side, represented by its respective

23  counsel, engaged in arms-length negotiations with the assistance of the mediator.  At the

24  conclusion of the mediation, the Parties both accepted the mediator's proposal. With

25  further assistance from the mediator, the Parties reached a mutually agreeable

26  Memorandum of Understanding.  Most importantly, Plaintiff and Class Counsel believe

27  that this settlement is fair, reasonable and adequate. (Decl. Blumenthal at  ¶7(b).)

28          After the agreement to settle, the specific terms of the settlement required

1  additional negotiation before the final written agreement could be signed. Class Counsel

2  began the process of reviewing the settlement terms and drafting the Agreement and

3  exhibits. Even after the parties reached an agreement, Class Counsel had to ensure that

4  the terms of the Settlement were fair to every member of the Class and contained the

5  requisite opportunities for notice, exclusion, and objection in accordance with federal

6  class action law. Plaintiff filed a motion for preliminary approval of the Settlement,

7  which the Court granted after additional information was provided and certain revisions

8  were made to the Class Notice. [Doc. No. 57]. Notice of the settlement providing Class

9  Members with notice and an opportunity to claim monetary relief, to opt out, or to object

10 was then mailed by the Settlement Administrator on June 5, 2019 to the individuals who

11 comprise the Class. (Decl. Blumenthal at ¶ 7(d).)

12                     3.    Counsel is Experienced in Similar Litigation

13        Class Counsel in this matter has extensive class action experience in many fields

14 and has represented thousands of persons in class actions involving wage and hour

15 litigation. Class Counsel has been previously approved as experienced Class Counsel

16 by state and federal courts throughout California, and Courts have found that Class

17 Counsel has substantial experience handling large employment related class actions and

18 has been found to be qualified class counsel in prior actions. A list of previous and

19 current class action cases managed by the Class Counsel in this action is provided to the

20 Court by way of the Declaration of Norman Blumenthal. Class Counsel have

21 participated in every aspect of the settlement discussions and have concluded the

22 settlement is fair, adequate and reasonable and in the best interests of the Class. (Decl.

23 Blumenthal at ¶ 2.)

24                     4.    There Are No Objections to the Settlement and No Opt-Outs

25        After dissemination of the class notice to the 335 members of the Class, which

26 provided each Class Member with the terms of the settlement, not a single Class Member

27 has objected to the settlement and no Class Member requested exclusion from the

28 settlement. The three Class Members who submitted responses [Doc. No. 64, 65 and 66]

are in fact asserting disputes as to their workweek allocations and are being handled disputes which have been accepted.  (Decl. Blumenthal at ¶4.)  The absence of any objector strongly supports the fairness, reasonableness and adequacy of the Settlement. See *In re Austrian & German Bank Holocaust Litigation*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement."); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d. Cir. 1990) (29 objections out of 281 member class 'strongly favors settlement'); *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981) (The fact that 7 out of 109 class members objected to the proposed settlement should be considered when determining fairness of settlement.)

Importantly, every Class Member was given the opportunity to participate in the Settlement under the same terms.  The entire Class elected to participate in the Settlement and will be mailed a check for their Settlement Share.  Here, given the fact that not objection was made to the settlement, the Court should conclude that the settlement is fair, reasonable and adequate.  (Decl. Blumenthal at ¶ 4.)

5.  The  Risk, Expense, Complexity, and Likely Duration of Further Litigation

The complexities and duration of further litigation cannot be overstated.  Here, a number of defenses asserted by Defendant presented serious threats to the claims of Plaintiff and the other Class Members.  Defendant contends that Defendant's employment practices complied with all applicable Labor laws.

For example, Defendant contended that employee compensation was properly included in the overtime calculation and argued that overtime claims were precluded by a collective bargaining agreement.  Defendant could also argue that any failure to pay overtime would not give rise to derivative wage statement penalties under *Maldonado v. Epsilon Plastics*, Inc., 22 Cal. App. 5th 1308, 1336-1337 (2018).  Defendant could also argue that they acted in good faith and without willfulness, which if accepted would negate the claims for waiting time penalties and wage statement penalties.  Plaintiff also provided extensive detail as to the claims and risks thereof in the supplemental

1  declarations submitted for preliminary approval. [Doc. No. 52 and 54].  If successful,

2  Defendant's defenses could eliminate or substantially reduce any recovery to the Class.

3  While Plaintiff believes that these defenses could be overcome, Defendant maintains

4  these defenses have merit and therefore present a serious risk to recovery.    (Decl.

5  Blumenthal at ¶ 8(a).)

6       Moreover, there was also a significant risk that, if the Action was not settled,

7  Plaintiff would be unable to obtain class certification and maintain a certified class

8  through trial, and thereby not recover on behalf of any employees other than themselves.

9  At the time of the mediation, Defendant forcefully opposed the propriety of class

10 certification, arguing that individual issues precluded class certification.  Defendant

11 could also contest class certification by arguing injury and good faith were case by case

12 determinations that precluded class certification.  Plaintiff is aware of cases where class

13 certification of similar claims was denied.  See e.g. *Ferguson v. Randy's Trucking, Inc.*,

14 2016 U.S. Dist. LEXIS 32719 (E.D. Cal. 2016); *Santos v. TWC Admin. LLC*, 2014 U.S.

15 Dist. LEXIS 199358 (C.D. Cal. 2014).    While other cases have approved class

16 certification in wage and hour claims, class certification in this action would have been

17 hotly disputed and was by no means a foregone conclusion. (Decl. Blumenthal at ¶8(b).)

18     Both Plaintiff and Class Counsel recognize the expense and length of a trial in this

19 action against Defendant through possible appeals which could take at least another two

20 to three years.  Class Counsel also have taken into account the uncertain outcome and

21 risk of litigation, especially in complex actions such as this Action.  Class Counsel are

22 also mindful of and recognize the inherent problems of proof under, and alleged defenses

23 to, the claims asserted in the Action.  Moreover, post trial motions and appeals would

24 have been inevitable.  Costs would have mounted and recovery would have been delayed

25 if not denied, thereby reducing the benefits of an ultimate victory.  Plaintiff and Class

26 Counsel believe that the settlement confers substantial benefits upon the Class Members,

27 and have determined that the settlement set forth in the Agreement is in the best interest

28 of the Class.  (Decl. Blumenthal at ¶8(c).)

## VI.    CONCLUSION

For the reasons stated herein and in the accompanying declarations, Plaintiff respectfully submits that the proposed settlement is fair, reasonable and adequate to the Class and to each Class Member, and should therefore be finally approved.

Dated: July 25, 2019                    BLUMENTHAL NORDREHAUG BHOWMIK
                                        DE BLOUW LLP

                                        By:_____/s/Norman B. Blumenthal_____
                                            Norman B. Blumenthal, Esq.
                                            Attorneys for Plaintiff and the Class