UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BHANU VIKRAM,

    Plaintiff,

v.

FIRST STUDENT MANAGEMENT, LLC,

    Defendant.

Case No. 17-cv-04656-KAW

**ORDER GRANTING MOTION FOR FINAL APPROVAL; GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARD**

Re: Dkt. Nos. 63, 67

Plaintiff Bhanu Vikram filed the instant putative class action against Defendant First Student Management, LLC, alleging violations of various California labor laws. (*See* Second Amended Compl. ("SAC"), Dkt. No. 56.) The parties subsequently settled the case, and on March 7, 2019, the Court preliminarily approved the proposed settlement and directed that notice be sent to the class members. (Preliminary Approval Ord., Dkt. No. 57.) Pending before the Court are: (1) Plaintiff's motion for final approval of the settlement, and (2) Plaintiff's motion for attorney's fees, costs, and a service award. (Plf.'s Mot. for Final Approval, Dkt. No. 67; Plf.'s Mot. for Attorney's Fees, Dkt. No. 63.) No opposition was filed.

Upon consideration of the parties' filings, as well as the arguments presented at the August 29, 2019 motion hearing, and for the reasons set forth below, Plaintiff's motion for final approval is GRANTED, and Plaintiff's motion for attorney's fees is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND

### A.    Factual Background

Defendant is a school bus operator that provides student transportation services for schools and districts. (SAC ¶ 2.) Plaintiff alleges that Defendant failed to accurately calculate and pay

wages in two ways. (SAC ¶ 6.) First, Plaintiff alleges that employees were required to appear at the bus yard at a pre-designated time and stand in line to receive route assignments and keys. (SAC ¶ 7.) Employees then walked to their assigned bus and logged into Defendant's time-keeping system. Between employees' arrival at the bus yard at the pre-designated time and logging in, an average of five to ten minutes would have passed. (SAC ¶ 7.) Employees, however, were not paid for this time.

Second, Plaintiff alleges that Defendant had a non-discretionary program that paid incentive wages based on employees meeting various performance goals. (SAC ¶ 9.) One such goal involved assisting handicapped children. (SAC ¶ 9.) Specifically, employees who were required to use the lift assist with handicapped children were compensated with incentive pay in the amount of $7.00/day. (SAC ¶ 9.) This pay was called "lift pay" or "comm" pay. (SAC ¶ 9.) Plaintiff alleges that Defendant failed to include this incentive compensation as part of their employees' regular rate of pay when calculating overtime. (SAC ¶ 9.)

### B. Procedural Background

On July 6, 2017, Plaintiff filed the instant case, alleging violations of various California labor laws. (*See* Compl., Dkt. No. 1.) In litigating the case, Plaintiff served discovery and exchanged information and documents. (Blumenthal Decl. ¶ 6(b), Dkt. No. 67-1.) Class counsel also reviewed documents provided by Plaintiff and Defendant, and retained an expert to calculate damages. (Blumenthal Decl. ¶ 6(d).) On April 23, 2018, the parties participated in an all-day mediation with Gig Kyriacou. (Blumenthal Decl. ¶ 6(g).) The parties engaged in arms-length negotiations, and at the conclusion of the mediation, the parties accepted the mediator's proposal. (Blumenthal Decl. ¶ 6(g).)

On December 4, 2018, Plaintiff filed an unopposed motion for preliminary approval. (Dkt. No. 47.) On December 20, 2018, the Court requested supplemental briefing. (Dkt. No. 50.) On January 7, 2019, Plaintiff filed a supplemental declaration. (Dkt. No. 52.) The supplemental declaration stated that the settlement was limited only to the comm payments, or the bonus paid to drivers required to use the lift assist for handicapped children. (*See* Dkt. No. 52 ¶ 4a.)

On January 23, 2019, the Court requested additional supplemental briefing, noting that the

2

then-operative complaint "contains no facts related to 'comm' payments, lift payments, or bonuses in assisting handicapped children." (Dkt. No. 53 at 1.) On January 31, 2019, Plaintiff for the first time clarified that the lift and comm payments were a type of incentive compensation. (Dkt. No. 54 at 1.) Pursuant to the Court's order, Plaintiff filed the operative complaint, which contained facts specific to the claims being settled. (Dkt. No. 55 at 1-2; SAC ¶ 9.)

On March 7, 2019, the Court held a hearing on March 7, 2019. (Dkt. No. 58.) That same day, the Court granted Plaintiff's motion for preliminary approval.

### C. Settlement Agreement

Under the terms of the settlement agreement ("Settlement"), Defendants agree to pay a "Gross Settlement Amount" of $435,000. (Blumenthal Decl., Exh. 2 ("Settlement Agreement") ¶¶ I.Q, III.A.) Of the Gross Settlement Amount, Plaintiff's counsel seeks an attorney's fee award of 25%, or $108,750, costs not to exceed $10,000, settlement administration costs of $8,662.50 and a service award for named Plaintiff of $10,000. (Settlement Agreement ¶¶ III.B.1-2, 4; *see also* Molina Decl. ¶ 17, Dkt. No. 68.) The Gross Settlement Amount also includes $10,000 in penalties under California's Private Attorneys General Act ("PAGA"); $7,500 shall be paid to the California Labor and Workforce Development Agency ("LWDA") and $2,500 will be part of the Net Settlement Amount for distribution to participating class members. (Settlement Agreement ¶ III.B.3.) This leaves a Net Settlement Amount of $290,087.50. (Molina Decl. ¶ 15.)

Settlement payments are calculated by: (1) dividing the Net Settlement Amount by the total workweeks worked by all participating class members during the class period, including a workweek enhancement for former employees, and (2) multiplying the result by each individual's total number of workweeks worked during the class period. (Settlement Agreement ¶ III.C.2.) Former employees will receive a 2.0 enhancement multiplier of their workweeks to account for their California Labor Code § 203 waiting time penalty claim. (Settlement Agreement ¶ III.C.2.)

The claims being released by the Settlement are limited to the "failure to pay overtime wages associated with the payment of lift pay, and all related and derivative claims based thereon, up to June 15, 2018, and which were alleged, or could have been alleged, in the original Complaint or any amended Complaint filed in the Action." (Settlement Agreement ¶ I.X.) All

3

1 other claims, including those related to uncompensated time between arriving at the bus yard and logging in, will be dismissed without prejudice. (Settlement Agreement ¶ III.F.1.) The class is limited to individuals who worked for Defendant as bus drivers at Defendant's San Francisco location between July 6, 2013 and June 15, 2018, as the lift and comm payments only occurred at the San Francisco location. (Settlement Agreement ¶ 1.B; *see also* Dkt. No. 54 at 1.)

## II. LEGAL STANDARD

In deciding whether a settlement agreement is fair, adequate, and reasonable to all concerned, the Court considers the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Ninth Circuit also counsels that while "strong judicial policy favors settlements, the settlement may not be the product of collusion among the negotiating parties." *Churchill Vill., LLC*, 361 F.3d at 576 (internal quotation and modification omitted). Further, when a settlement agreement is negotiated prior to formal class certification, the court must be particularly vigilant for signs of collusion, as "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant. *Id.* at 947.

## III. DISCUSSION

### A. Final Approval

The Court finds that the *Churchill* factors support final approval of the Settlement.

First, as noted in the Court's preliminary approval order, Plaintiff's case presented several risks. For example, with respect to the overtime claim, there were risks that § 510's definition of

4

overtime did not apply where workers were covered by a qualifying collective bargaining agreement, and that California Wage Order 9 did not apply to employees driving school buses and school pupil activity buses. (Preliminary Approval Ord. at 8-9.) As to the waiting time and wage statement penalties, there was a risk of no recovery if Defendant's conduct was not found to be willful. (*Id.* at 9.) Further, the California Court of Appeal in *Maldonado v. Epsilon Plastics, Inc.* found that "inaccurate wage statements alone do not justify penalties; the plaintiffs must establish injury flowing from the inaccuracy." 22 Cal. App. 5th 1308, 1334 (2018). In light of these risks, the Court finds that the first *Churchill* factor favors final approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Plaintiff would still have to seek class certification, and disputes exist as to the merits of the case. The Court concludes that the second *Churchill* factor favors final approval.

Third, Plaintiff faced a risk that they would not be able to obtain and maintain class certification. Plaintiff states that Defendant forcefully opposed class certification at the time of the mediation, arguing that individual issues precluded class certification. (Blumenthal Decl. ¶ 8(b).) Defendant further argued that injury and good faith were case by case determinations that precluded class certification. Plaintiff also points to cases that denied certification of similar claims. *E.g.*, *Santos v. TWC Admin. LLC*, Case No. CV 13-4799 MMM (CWx), 2014 U.S. Dist. LEXIS 199358, at *53-59 (C.D. Cal. Aug. 4, 2014) (denying class certification where the plaintiff could not show sufficient injury from the failure to provide accurate wage statements). This factor favors final approval.

Fourth, the amount offered by the Settlement is relatively high, as the Gross Settlement Amount represents 78% of the value of the non-PAGA claims, as well as 30.6% of the California labor law violations and PAGA penalties. As discussed above, the discount is justified by the risks faced by Plaintiff in prevailing on the merits on behalf of the class. The Court finds that this factor favors final approval.

Fifth, it appears Plaintiff has engaged in sufficient investigation in this case. Class Counsel has interviewed Plaintiff, reviewed documents provided by Plaintiff and Defendant, analyzed the legal positions taken by Defendant, exchanged information through informal

discovery, and retained an expert to calculate damages. (Blumenthal Decl. ¶ 6(d).) Prior to the mediation, Defendant provided employment and payroll information, allowing Plaintiff to calculate the value of the case. (Blumenthal Decl. ¶ 6(d).) This allowed Class Counsel to evaluate the claims on a class-wide basis. The Court concludes that the discovery conducted was adequate to allow the parties to make a fully informed decision on settlement. Thus, this factor favors final approval.

Sixth, Class Counsel supports the Settlement as fair. (*See* Blumenthal Decl. ¶¶ 6(d), 7(b).) Further, Class Counsel is experienced in this area; the primary attorneys in this case have significant experience in employment matters. (*See* Nordrehaug Decl., Exh. 1, Dkt. No. 63-1.) Class Counsel's experience and support for the Settlement favors final approval.

Seventh, notice of the settlement was provided to the LWDA, as well as the Class Action Fairness Act ("CAFA") notice to all applicable state officials. No government entity has lodged an objection to the settlement. The Court finds that this *Churchill* factor favors final approval.

Finally, the reaction of the class members to the proposed settlement has been positive. Per the settlement administrator, the class list included 335 individuals. (Molina Decl. ¶ 5.) Only one notice was deemed undeliverable, as no current address was found even after a skip trace was performed. (Molina Decl. ¶ 10.) While three "objections" were filed with the Court, the three objections were all disputes regarding the number of workweeks calculated, rather than objections to the settlement itself. (*See* Dkt. Nos. 64-66; Molina Decl. ¶ 11.) Those disputes have been resolved, and the necessary adjustments made. (Molina Decl. ¶ 11.) No other objections were made, and no opt-outs were received. (Molina Decl. ¶¶ 12, 13.) As no class members have opted out and no individuals have objected to the Settlement terms, this last *Churchill* factor favors final approval.

Overall, the *Churchill* factors favor approval of the settlement. Additionally, the Court finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion. Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendants.

Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the

Settlement is fair, adequate, and reasonable. Accordingly, the Court GRANTS Plaintiff's motion for final approval.[1]

### B. Attorney's Fees and Costs

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.*

Here, Class Counsel seeks 25% of the common fund, or $108,750.00. (Plf.'s Mot. for Attorney's Fees at 1.) The Court finds that this request is reasonable, given that Class Counsel seeks the benchmark amount and that no class member has objected to the proposed fee award. This case was also risky for Class Counsel. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Further, while the Settlement Amount represents a discount, there were risks on the merits. The Court concludes that under the percentage method, the attorney's fees requested is reasonable.

The Court also applies the lodestar method as a cross-check on the percentage method. Class Counsel asserts the following hourly rates and hours billed through June 2019:

| Attorney: | Hourly Rate: | Hours Billed: | Total: |
| --- | --- | --- | --- |
| A.J. Bhowmik | $695 | 37.5 | $26,062.50 |
| Jeff Herman | $475 | 3.8 | $1,805.00 |
| Kyle Nordrehaug | $750 | 48.45 | $36,337.50 |
| Molly DeSario | $575 | 48.2 | $27,715.00 |
| Norman Blumenthal | $795 | 23.75 | $18,881.25 |
| Nick DeBluouw | $495 | 22.7 | $11,236.50 |

---

[1] The parties have also selected the Legal Aid Society as the *cy pres* beneficiary. (Plf.'s Mot. for Final Approval at 7.) The Legal Aid Society is a nonprofit legal services organization that protects worker's rights, and is located in San Francisco. (Blumenthal Decl. ¶ 3(c).) The Court finds that the Legal Aid Society is an appropriate *cy pres* beneficiary.

| Piya Mukherjee | $475 | 8.8 | $4,180.00 |
| Rico Ehmann | $475 | 21.85 | $10,378.75 |
| Scott Blumenthal | $250 | 3.0 | $750.00 |
| Victoria Rivapalacio | $475 | 36.60 | $17,385.00 |
| | | | $154,731.50 |

(Nordrehaug Decl., Exh. 3.) This time did not include hours spent on the instant motions. Class Counsel has also information regarding counsel's experience and qualifications, as well as billing records. (Nordrehaug Decl., Exhs. 1, 3.)

The Court finds that based on the lodestar method, the amount sought is reasonable. Class Counsel seeks an amount that is a .7 multiplier, even before considering the time spent on the instant motions. Moreover, the Court notes that other courts have approved of similar hourly rates for Class Counsel in approving class settlements. *Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-4781-RS, 2019 WL 2029061, at *4 (N.D. Cal. May 8, 2019) (performing cross-check based on hourly rates of $175-$795); *Metrow v. Liberty Mutual Managed Care LLC*, Case No. EDCV 16-1133 JGB (KKx), 2018 WL 6265085, at *10 (C.D. Cal. June 14, 2018) (same). Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorney's fees sought by Class Counsel is reasonable. The Court therefore GRANTS Plaintiff's request for an award of attorney's fees in the amount of $108,750.00.

### C. Attorney's Costs

Plaintiff seeks $10,000 in costs, which is less than the actual costs incurred. (Plf.'s Mot. for Attorney's Fees at 17.) Plaintiff incurred $12,966.25 in costs, which include filing fees, mediation costs, travel expenses, legal research, and copying and postage. (Nordrehaug Decl., Exh. 3.) Defendant does not oppose Class Counsel's request. The Court finds that the costs requested were reasonably incurred, and GRANTS Plaintiff's request for costs in the amount of $10,000.

### D. Service Award

Finally, Plaintiff requests a service award of $10,000 for named Plaintiff. (Plf.'s Mot. for Attorney's Fees at 18.) Service awards to named plaintiffs are "fairly typical in class action cases." *Rodriguez v. W Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the

8

class, to make up for financial or reputational risk undertaken in bringing the action." *Id.* (internal citation omitted). "Several courts in this District have indicated that [service] awards of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." *Harris v. Vector Mktg. Corp.*, Case No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012). In *Ko v. Natura Pet Products, Inc.*, for example, the district court rejected the requested award of $20,000 for a plaintiff who had spent approximately 50 to 100 hours on the case. No. 09-cv-2619-SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012). The district court explained that the "$20,000 [service award] is quite high for this district," and concluded that the requested award was excessive. Instead, the district court awarded the standard $5,000, noting that the named plaintiff would "still be compensated handsomely for her time, the $5,000 award results in either a $100 or $50 hourly rate for the 50-100 hours Plaintiff expended on this case." *Id.* Similarly, in *Ontiveros v. Zamora*, the district court rejected a $20,000 incentive award that would have compensated the named plaintiff at a $73.80 hourly rate, instead awarding a $50 hourly rate. 303 F.R.D. 356, 366 (E.D. Cal. 2014). In justifying this downward departure, the district court explained that "[o]vercompensating named plaintiffs at the expense of a reduction in the common fund available to class []members could encourage collusion at the settlement stage of class actions where a named plaintiff's interest naturally diverges from that of the class, compromising his role as a judge of adequacy." *Id.*

Here, the $10,000 service award sought is greater than the presumptively reasonable $5,000 award in this district. The Court finds that $10,000 is not reasonable in this case. In his declaration, Plaintiff states that he spoke to his attorneys several times about how Defendant implemented its company policies and procedures, and provided documents. (Vikram Decl. ¶ 3.) Plaintiff also gathered information from former co-workers. (Vikram Decl. ¶ 6.) Plaintiff did not attend the mediation, although he made himself available. (Vikram Decl. ¶ 7.) Altogether, Plaintiff estimates that he spent 100 hours working on the case. (Vikram Decl. ¶ 8.)

The Court finds that $5,000 – a $50 hourly rate -- is sufficient to compensate for work performed and to make up for financial or reputational risks undertaken in bringing an action. Plaintiff's work on this case, while not insignificant, does not warrant a higher award. While

9

Plaintiff cites to cases that have awarded higher service awards, the work in those cases was significantly higher and/or involved costs incurred by the plaintiff. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (awarding $50,000 to the named plaintiff who was involved in litigation lasting over fifteen years, attended three pre-trial hearings, was deposed twice, testified at trial, and made various out-of-pocket expenditures for gas, meals, and wear and tear on his vehicle in traveling from Fresno to San Francisco, San Jose, and Los Angeles); *Dyer v. Wells Fargo Bank, N.A.* 303 F.R.D. 326, 335 (N.D. Cal. 2014) (awarding $10,000 to named plaintiff who was deposed, attended a four-day mediation, and spent more than 200 hours assisting in the case); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267-68 (N.D. Cal. 2015) (awarding $10,000 to named plaintiff who spent 73 hours on the case but lost job opportunities due to his role as class representative, as he had received letters indicating that his application was rejected because of his pending litigation).

At the hearing, Plaintiff's counsel acknowledged that there was nothing extraordinary about the work Plaintiff performed in this case, but noted that he was signing a general release. Other cases, however, have involved $5,000 service awards where the plaintiff signed a general release. *E.g.*, *Jefferson v. Chase Home Finance*, Case No. 06-cv-6510-TEH, 2009 WL 10702540, at *3 (N.D. Cal. Feb. 23, 2009); *Bennett v. SimplexGrinnell LP*, Case No. 11-cv-1854-JST, 2015 WL 12932332, at *8 (N.D. Cal. Sept. 3, 2015); *Wilson v. Tesla, Inc.*, case No. 17-cv-3763-JSC, 2019 WL 2929988, at *15 (N.D. Cal. July 8, 2019) (decreasing requested $10,000 award to $5,000, despite the plaintiffs executing a general release). Further, Plaintiff provides no information as to the value of the other claims being released by Plaintiff, to suggest that they would be worth an additional $5,000. Thus, the Court finds that the signing of the general release, without more, does not warrant awarding a service award that is higher than the presumptively reasonable $5,000.

## IV. CONCLUSION

For the reasons stated above, the Court: (1) GRANTS Plaintiff's request for final approval of the settlement; (2) GRANTS Plaintiff's request for attorney's fees in the amount of $108,750; (3) GRANTS Plaintiff's request for litigation costs in the amount of $10,000; and (4) DENIES

Plaintiff's request for a $10,000 service award, and instead awards Plaintiff $5,000.

The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated: September 3, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge